May it please the court, Glenn Choi for Appellant Defendant Scott Koth. We're arguing two issues as to the first issue, the validity of the traffic stop. Our argument basically boils down to the argument that the officer, Officer Silva, just did half of the required inquiry. Under the relevant ordinances, a license is suspended for a given amount of time. But also under the ordinances, the driver has to pay a fee for reinstatement. Now, the officer reports that he while following before stopping the car, he radios to dispatch to find out if there is in fact a license suspension for this particular car, which he knows. He knows the driver from prior contacts. So he radios to dispatch and he exchanged with dispatch, which is cited page five of our opening brief. The officer says to the dispatcher, hello, can I do a quick license check, please? Name or number? Name. Last name is Koth, K-O-T-H. First name is Scott. Operator is hello. This is Sandy. Officer, his question, is it suspended? The answer is yeah. Ends 8-23-2006. The stop is happening a couple months later, October 24th, 06. So he gets that answer to his question. But it's clear there's some uncertainty in his mind as to whether it is in fact suspended that day, October 24th, because he asks again. So it's suspended, huh? That's his question. Now, does the answer dispel or should it dispel his uncertainty? It can't because the answer is the same. Yeah, started 5-24-2006, ends 8-23-2006. He gets the same answer to the question he repeated twice. We have to assume because there was uncertainty in his mind as to the currency or the current status as to suspension. So, again, he asks the question, is it suspended? But he doesn't ask the next necessary question of which only take three or five seconds, whatever. Is it reinstated? He testified at the suppression hearing that he understood that, in fact, that step had to be taken. The person has to go to DMV, pay some sort of fine or fee, he says, to get it reinstated. He doesn't ask that question. Under these circumstances, we're saying that there is no reasonable suspicion established or probable cause. Now, in the totality, this may seem like a fairly minor issue, but it leads to this major intrusion, the stop of him as he's driving his car. And it ends up in his conviction, ultimately. And we have cited cases which stand for the proposition that where there is opportunity for inquiry and investigation, inquiry and investigation should be made. An officer is not warranted in relying upon circumstances deemed by him suspicious when the means are at hand of either verifying or dissipating those suspicions without risk. And he neglects to avail himself of those means. We cite to Lafay for this quote, which comes from a state case, a Michigan state case. But we also cited to four federal cases. This is page 18 of our opening brief. One of them, U.S. Allen, adopts the exact language from that state case filer. The district court order said that we had not cited adequate precedent for this proposition about where the further investigation can easily be made, it should be made. But we did, in fact, say this is pressing the federal president. As to the second issue, whether it was probable cause shown in the search warrant to search the house. We would step back and say that the warrant for the house is fairly. The affidavits underline are fairly confused and not very clear in the approach. In fact, there are two affidavits prepared by the grand officer, Officer Rose. The first is entitled Training and Experience. It's a catchment one to the affidavit. It's seven pages in. Officer Rose discusses, among other things, the habits, the practices of drug cultivators, drug traffickers, firearm traffickers. It's a general discussion of what this type of person does. Nowhere in that affidavit does it conclude that Scott Coff is such a cultivator or trafficker or firearms trafficker. Again, it's just a general discussion from training and experience of the habits and practices of such persons. The second affidavit called Observation of a Fire is a four page affidavit. And in this affidavit, he talks a little bit more directly about Scott Coff. He notes that when stopped, 54 grams of marijuana leaf were found in his car. Marijuana, marijuana smoking bombs. What about ammunition and pictures of a gun safe with four rifles? Yes. So it's noted ammunition is found in the car and a laptop is found in the car. They get a warrant and they find in the laptop pictures, one picture of a gun safe with two rifles described by brand. And it says also two other rifles. They got a search warrant for the laptop. Pardon me. Yes, they did. So Officer Rose, having gotten the search warrant for the house, attaches the search warrant for the house for the car to the one for the house. And he recites verbally or in writing the description of the photo of the gun safe. Nowhere does it say where this gun safe was backing up. Nowhere does it say that this laptop, in fact, was Scott Coff's laptop. He doesn't say where the pictures or picture of the gun safe was taken. He doesn't say that the gun safe belongs to Scott Coff. It's a picture. It's basically bits of information in a hard, in a laptop that, you know, contains millions of bits of information. It's not a tie. It's not a nexus to the house. So it's pretty clear. It's clear that there's insufficient nexus to the house because it's never established that Scott Coff is a drug trafficker or a cultivator and so forth. It's also clear that there's not enough evidence based on the ammunition found in the car to search the house. We cite cases. Start at page 28 of our opening brief. Once from the Ninth Circuit, in fact, they're both from the Ninth Circuit, and Collins cases where it's discussed how much evidence suggesting that firearms will be found in the home must be presented to establish the search warrant or to get the search warrant to search the house. And it's clear that it's a qualitative lack that we have here in the Coff case. There are witnesses seeing the defendant on his balcony waving his gun around and so forth. A direct tie to the house. Well, the other pictures show pictures of the interior of a house. That's a very important point. Those pictures were not presented to the magistrate when the search warrant for the house was sought. We address that both in the opening brief and in the reply brief that those pictures were attached to a responsive memo from the government. When we were in district court litigating, litigating the suppression issue, those pictures were gathered, I guess, from the police, obviously attached to the memo. But those pictures we made clear, and we made clear now, were never presented to the magistrate issuing the search warrant for the house. There's a picture of me living outside. There's a picture of your client, date stamped, and a picture of his house that's date stamped, and then the picture of the AK-47 that's in the same group. Yes, sir. Basically, let me just say, if those pictures had been presented to the magistrate judge, there would have been no question, would there? I would agree. I guess that's why they were appended to the memo. They show pictures of cough, and they show pictures of guns in the safe, and they also show cough with drug paraphernalia. But, again, those pictures were not presented to the magistrate. We would assert that whether it was probable cause or not should be assessed without having in mind the evidence before the magistrate And no other evidence should be considered in assessing whether or not it was probable cause at the time that the search warrant was issued. Thank you. Thank you. Once again, Les Osborne for the United States. We have, of course, the two issues that have been addressed. The first is whether or not there was probable cause to stop the car. Reasonable suspicion. Reasonable suspicion, excuse me. And the record is clear that the officer knew in September the expiration date that appeared on the computer sometime in August. In September, the officer met Mr. Coth, and, in fact, he was on a motorcycle. He found out then that in September he still did not have a license and, in fact, made Mr. Coth walk his bike, his motorcycle, some considerable distance because there was no license. He apparently found on October the 4th, in connection with another arrest, unrelated totally to our case, that Mr. Coth had no license. A representative of the county of Kauai testified that their way of entering suspended licenses in their computer, which is shared with the police department, is that the date the suspension ends is put as the end date. The entire entry is erased once the $25 reinstatement fee is paid. And the officer, Silva, testified that he was acquainted with that and he knew it. And as long as there was an entry on the computer, the $25 had not been paid and the license was not reinstated. He was aware of the county policy. He was aware of the county practice and, in fact, had personal knowledge that even the day before the driver of the car had no authorized license. So it would appear that the stop was perfectly reasonable on those facts. Would it have been a less reasonable stop if we called in and said, yes, it's been reinstated? Yes, Your Honor. Then it would have retroactively been unreasonable? Your Honor, the officer had to have a reason to stop the car. And his reason was that last time he checked with him, he didn't have a license. No, Your Honor. His reason was he communicated with the police dispatcher at that moment and there was no license. Well, it's a confusing interchange. I mean, he says it's suspended effective to a date that had already gone past. And then he says, so it's suspended. And I say, yes, technically that's not right. Technically that's not right. And your officer testified later that he knew that to get reinstated, you had to pay a fee. When you pay a fee, it comes off. That's it. Well, let's assume that the other – the officer hadn't testified as to the reinstate procedure. Is your position still the same? No, Your Honor. There would have to be some evidence that the man was driving the car without a license. And if there was no policy in Kauai County to require the paying of the $25 before you clear the record, you know, I don't believe he would have known one way or the other. Well, that would be my question. If he had twice before known that he was driving without the license and then saw it again, you say it would not be reasonable to stop him to see if he had gotten a license? It would be less reasonable, Your Honor. In this case, he had a certitude. He knew. In this case, in addition to that, he had called in. And in addition to that, he had been told that the latest record was that it was suspended as of an earlier period. And in addition, he knew that when the suspension actually ended by payment of a fee, that that would no longer appear on the record. Correct, Your Honor. Thomas's question, I guess, is if he didn't have the last part of the information and only called in and was told that it was suspended until an earlier date, would he still have and didn't know that that meant that it was still suspended? If he didn't have that last bit of information, Thomas is asking whether that would be a reasonable suspicion. I think the answer was probably not. Probably not. Now, after the seizure of the material in the auto, as I understand, the officer did get a search warrant for the laptop. That's correct. No, I'm sorry. The photographs, I'm sorry. The photographs were on some kind of an electronic device that apparently were visible. The record is silent on that. I was kind of confused about that. Right. I was too. The pictures were not on the laptop? Right. No, Your Honor. I believe they were on an electronic camera, one of these. Or a PD or something. Yes, Your Honor. But that was not, there was no motion in that regard, and it was never litigated. No, that was the confusing part for me. I just couldn't figure out where the photographs came from. I assumed it was the laptop. The concern then may be whether there's a warrant issued for the laptop or not, but apparently a search warrant was issued for the laptop, but now you're telling me that's completely irrelevant. Yes, Your Honor. A search warrant for a laptop that we don't know existed. No, there was a laptop in the car, Your Honor. There is no doubt there was a laptop. We don't know, based on the record, where the pictures came from. We know there was an electronic camera. We know there was a laptop. The only thing we don't know is where did the pictures come from. So there was no warrant for a search of the electronic camera? Not that I'm aware of. I am not aware of any other warrants than the warrants we're talking about because that was never questioned below, Your Honor. All right. Okay. Keep going. All right. So they found a photograph of the defendant with these guns. The counsel's right. The photograph was not appended to the warrant. However, they did know that he had been hunting. They did know that he had just come from his home. They did know that there was ammunition in the car. There were two crimes, felon in possession of a gun. He admitted that, and that's in the warrant, and a drug user, count two, in possession of a gun. So that's why the narcotics information was necessary and reasonable and included in the first affidavit because it was a known user of narcotics. They were looking to prove that. And the gun. You're telling us a lot of facts, but tell us which ones are in the warrant or the affidavit. There's one affidavit which supports looking for drug-related materials based on what they found in the car. There's another warrant looking for firearms based in the four corners of the warrant on the ammunition in the car  Tell us a lot of things about that. He knew he was hunting. He'd come from the house to go hunting. No, he had just not to go hunting. He had been hunting the day before, Your Honor. He said, I just left my house. I'm coming from my house, when he was stopped. That's the nexus, really, to the house. He was just coming there. He was driving his car with ammunition in his car, and he admitted being a felon. You know, the application says that the images came from the laptop. Located on the hard drive of the HP laptop computer were various images stored under My Documents. Two images taken on May 29, 2006 at 10.29 p.m. showed what appeared to be a gun safe, which contained an AK-47 rifle, M16, and two other rifles. Again, Your Honor, it was not litigated below. I have forgotten that in the long period of time. Maybe it was consensual. I don't know. Well, you don't know whether they had a search warrant for the laptop? It's my understanding he did not. There's no search warrant for the laptop? I don't believe there was. He said there was. Counseled? I know it wasn't litigated, but to me that's kind of a critical point. I think he needed a search warrant. Well, I thought it listed it. The warrant listed an HP computer. It said HP. Well, that's definitely a laptop. Was it HP laptop? Yeah, that's definitely a laptop. And I was wrong, and I take that back. It's clearly in the record that it was a warrant. But there was a warrant or it was a laptop? It was an independent search warrant issued for the laptop. For the laptop. Okay, where's that in the record? I believe that the judge just pointed to me that he had found the warrant listing the HP laptop. The warrant that went with second, I suppose, relative to the guns, had listed various things in it, and one of the listings was an HP laptop. Oh. That's my understanding. I'll go back and check the record, but that's my understanding. Right. That's a lie. Well, you would agree that you'd need a warrant for a certain laptop. Yeah, sure. Yeah. Unless it was consensual. Right. Okay. Any other questions from the court? No, sir. Thank you. Counsel, anything further? Thank you. Regarding the government's argument that the nexus to the house was his statement that he just was coming from his house, that doesn't create a nexus. It just tells where he was. It doesn't tell about his activities as to whether he is to be considered a trafficker or not. It's a connection in time, closely connecting himself to his house, but it says nothing about his activities that he may or may not be using his house for. Well, where would he also be storing a gun? We know he has ammunition in the car. Isn't it logical to search for a gun if you've got ammunition in the car and he's a felon in possession? We would argue that in the context of the cases, again, that we cite, that it's not enough. The cases, again, that we cite do discuss, you know, what's the adequacy of a nexus to the house, and what is established in the cases is much more than just finding bullets in the car or a situation where you find bullets in the car. Under the cases, that's not enough. It just gives maybe some sort of possibility that there would be further firearms or ammunition in the house. In fact, he said in a statement to the police that he had been target practicing with his friend, not hunting, target practicing, and that the ammunition belonged to his friend. I think he said the gun belonged to the friend. I think he said he owned the ammunition. He didn't know that that was his gun. Okay. It's been corrected. In any event, he disavowed any speculation that there may be firearms found in the house, and he said that the friend has possession. And again, the basic point would be that you find ammunition in the car. That doesn't necessarily, on this day and age, lead to any sort of establishment of an adequate nexus to search the house. Some people store things in the car instead of the house. They use that as a repository for all types of things, and it just creates an inadequate nexus, we argue, for the search of the house. This is a conditional plea? It was, yes. And what is he charged with? A drug user in possession of ammunition and firearms, I believe. Okay. And felon in possession also? Yes, Your Honor. He did not plead to that second count pursuant to our three agreements. Okay. But if you excluded everything from the search, there is still the ammunition in the car? That's correct. And his admission that he's a felon? That's count two, which is still out there, actually. And that he owned the ammunition. I mean, he says he owned the ammunition. That's still hanging out there as we do this appeal. I just wonder where you're going to be if you win on this motion. I've had some preliminary discussions with Mr. Osborne. I guess we might have to talk about that. Well, just briefly. You want a felon in possession of a firearm and ammunition? Do you want this? That's what it cuts, isn't it? Looks like a slam-dunk case the other way. Why don't you have some more discussions? Even if you win, you've got to have paid discussions. Yes. Thank you. Thank you. The next case is submitted. The next case for oral argument is U.S. v. Richard Dickey-Stevens.
judges: Reinhardt, Brunetti, Thomas